Grace Sanctuary  
vs. } Div. No. 16389.  
Harry I. Sanctuary

April 9, 1928

TANNER, P. J. This is a divorce petition which was heard and granted by Mr. Justice Barrows on January 2, 1924. Final decree was entered on July 7, 1924.

On April 3, 1928, this case was heard upon a motion of Thomas F. Cooney, Esq., and Edward M. Brennan, Esq., as amici curiae, asking that said final decree of divorce be vacated upon two grounds; first: because the Court never acquired jurisdiction; and second: because said decree was obtained by fraud upon the Court, said fraud being the false testimony of the petitioner that she on her part had performed all the obligations of the marriage covenant.

The ground alleging that the Court never acquired jurisdiction is based upon an affidavit of petitioner that she last heard of said Harry I. Sanctuary in November 1914, whereas it appeared in the testimony that she gave at the hearing of said divorce petition that she had lived with him in 1917. Upon this affidavit service by publication was ordered and made.

We are satisfied from the testimony of John J. Richards, the attorney for Grace Sanctuary in her divorce petition, that the date of 1914 was put in the affidavit by his inadvertence. We are also satisfied from the testimony of the said Richard that proper search and inquiry were made to endeavor to locate the said Harry I. Sanctuary and make personal service upon him, and that the order of publication was properly granted. It appears further from

the testimony of said Richards that Mrs. Sanctuary had placed her case in his hands about two years before the divorce petition was filed, and that during that time he made efforts to locate the respondent; that he wrote to the respondent's mother in December 1920 and received a curt reply that she knew nothing of his whereabouts; that in this letter he had told the mother that he desired to get in touch with the respondent in relation to a divorce matter; that he, Richards, wrote to the Adjutant General's Department, thinking that the respondent might have been in the army, but was unable to locate him; that on the 20th of March, 1923, the day before the petition was filed, he wrote again to the respondent's mother and told her that he desired to make service upon her son, to which letter he received no reply.

We have no doubt that Mr. Richards, if he had received any information, would have endeavored to make personal service after this time. The amici curiae had filed the affidavit of the respondent Sanctuary to the effect that he did not know of the divorce proceedings, but this was met by a later affidavit from respondent Sanctuary to the effect that he did know about it but did not desire that his wife should know of his whereabouts. There was, therefore, no fraud upon the Court in procuring notice by publication and the Court acquired jurisdiction to adjudicate said divorce petition.

As to the second cause upon which the Court is asked to vacate the decree, we think that the general rule of law is that to constitute a defense of recrimination, the misconduct of which the complainant is guilty must be such as in itself to afford the defendant a ground for divorce.

19 C. J. 94.

2nd Schouler on Marriage, Divorce & Domestic Relations, p. 1912.

*Nordlund* vs. *Nordlund*, 166 Pac.. 795.

Keezer on Marriage & Divorce, p. 304.

The testimony of the said Grace Sanctuary was read at considerable length to the Court, and from it, it appeared that she had permitted one Edwin Cary to kiss and caress her and had accompanied him to various camps where she had spent several hours at a time, but, as we remember the testimony, had never stayed over night and had usually been accompanied by her children, and she denies that any other relations existed between her and the said Cary, and it is not suggested by anyone that any further relations did exist. Adultery, then, is not shown by the testimony upon which the Court is asked to act; neither can it be said that it amounts to gross misbehavior which would authorize a divorce under the statute.

"The statute authorizing a divorce, among other causes, for gross misbehavior and wickedness repugnant to and inconsistent with the marriage contract does not justify a divorce upon the ground that the respondent husband has for a period, brief when compared with the period required by statute in cases of desertion, lived in the same house with, or previously has been the daily companion of another woman, each avowing for the other entire affection, though no relation legally criminal has existed between them."

*Stevens* vs. *Stevens*, 8 R. I. p. 557.

We do not think, therefore, that the testimony which was read to us amounts under our decision to such gross misbehavior as would have justified a divorce in favor of the husband, and that it can not, therefore, be considered such a recrimination as to justify vacation of the decree.

We think, however, that there is

another conclusive reason why the Court can not vacate this decree.

In the case of *Roberts* vs. *Roberts*, 18 R. I. 349, the Court is asked to vacate a decree obtained by the wife against her husband. The husband allowed the case to go by default and about six months after the granting of the divorce he filed a petition to set aside the decision, resting his petition on the ground that the allegations of the petition for divorce and the evidence in support thereof were false, as the petitioner and her witnesses well knew, and seeking to excuse his failure to contest the petition because of his confinement to the house by serious illness, to wit, consumption. The Court says that:

"Even if the petition had been filed during the life time of the petitioner, no sufficient ground is stated for granting a new trial. In *Folsom* vs. *Folsom*, 55 N. H. 78, it was held that a re-trial of a libel for divorce should not be granted on the ground that the decree was obtained by fraud and perjury of the libellant and his witnesses, no fraud being shown except by implication from the charge of perjury.

\* \* \* \*

"In *Dexter* vs. *Handy*, 13 R. I. 474, the defendant in an action of slander petitioned for a new trial on the ground that the plaintiff's witnesses after the trial admitted their testimony to have been untrue, and presented affidavits of persons claiming to have heard the admissions. No affidavits of the witnesses themselves admitting their testimony to have been untrue were presented and no steps had been taken by anyone to prosecute them for perjury. It was held in this state of facts that the petition should not be granted. And see *Brown* vs. *Grove*, 116 Ind. 84, to the effect that a new trial will not be granted to admit the introduction of impeaching evidence."

If the Court will not allow a divorce decision or decree to be impeached for perjury upon the application of one of the parties to the case, how much less could the Court allow such a decree to be impeached upon a motion of amici curiae evidently brought to assist the man who was equally responsible, at least, for what is now claimed to be such an improper relation as would justify the Court in setting aside a divorce decree to assist this man in the defense of an action for breach of promise of marriage.

In the case of *Roberts* vs. *Roberts*, already cited, the Court said.

"We would have regarded the evidence with more favor if the respondent's solicitation for the Court and the interests of the public had prompted him to move in the matter before the death of Mrs. Roberts. We can not resist the feeling that the respondent is more solicitous to obtain the $7000 left by the deceased than to protect the Court from imposition and uphold the interests of justice."

The Court must therefore decline to grant the motion.

Thomas F. Cooney and Edward M. Brennan *amici curiae*.

John P. Beagan & John J. Richards for Grace Sanctuary.